UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-3065 (DWF/LIB)

| | |
|---|---|
| KleinBank, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **UNITED STATES OF AMERICA'S** |
| | ) **MEMORANDUM IN SUPPORT** |
| | ) **OF MOTION FOR SUMMARY** |
| Raymond W. Haugland, et al., | ) **JUDGMENT** |
| | ) |
| Defendants. | ) |

## INTRODUCTION

Defendants United States of America, Department of Treasury, and the Internal Revenue Service The case before the Court concerns the priority of competing security interests in certain property of Defendants Raymond W. Haugland and Yvonne J. Haugland.  The United States has two perfected tax liens on the property in question, which it properly filed and recorded.  The Plaintiff, on the other hand, holds a mortgage that cannot be enforced without reformation due to a defective legal description of the property.  For that reason, the Plaintiff filed the underlying complaint in State court to reform its mortgage.  As explained in more detail below, Plaintiff's as-yet-unreformed mortgage cannot take priority over the federal tax liens under the well-established federal doctrine of "choateness."  Because the mortgage cannot be enforced summarily and must be reformed, it is inchoate.  The United States respectfully submits that this Court should therefore grant its summary judgment motion and deny the Plaintiff's cross-motion for summary judgment.

**STATEMENT OF MATERIAL, UNDISPUTED FACTS**

1. For the purposes of this motion, the Hauglands are the owners of the property subject of this lawsuit. Compl. ¶ 3.

2. The Plaintiff is the holder of a mortgage by virtue of an assignment dated August 14, 2007 in the original principal amount of $340,000.00 given by the Hauglands to Eagle Valley Bank, N.R., before being assigned to Plaintiff. Compl. ¶¶ 4-5 and Ex. A & C thereto.

3. The Plaintiff's mortgage contains an incorrect legal description of the property it sought to encumber. Compl. ¶ 6; Plaintiff's Statement of the Case [Docket 14] p. 2. Specifically, the Subject Property is located in Aitkin County, Minnesota and legally described as follows:

   That part of Government Lot 4 of Section 1, Township 49, Range 24, Aitkin County, Minnesota, to be described as follows: Commencing at a point on the South line of the Plat of Sandy Lake Beach where it intersects the southerly extension of the easterly line of Lot 30 of said Plat; thence Easterly along said South line of said plat a distance of 509.04 feet; thence South along the southerly extension of the westerly line of Lot 19 of said plat a distance of 125.00 feet; thence South 00 degrees 54 minutes 01 seconds West a distance of 383.94 feet to a point hereby designated and hereinafter referred to as POINT A; thence North 83 degrees 54 minutes 29 seconds East a distance of 194.01 feet; thence South 83 degrees 56 minutes 41 seconds East a distance of 373.00 feet; thence South a distance of 100.00 feet to the actual point of beginning of the following tract of land to be described; thence South 16 degrees 27 minutes 56 seconds East a distance of 213 feet, more or less, to the shoreline of Big Sandy Lake; thence Northeasterly along said shoreline to its intersection with a line bearing South 79 degrees 56 minutes 57 seconds East from the actual point of beginning; thence North 79 degrees 56 minutes 57 seconds West a

distance of 222 feet, more or less, to the actual point of beginning. It being the intent of this description that the southerly extension of the easterly line of said Lot 30 has an assigned bearing of South. Containing 0.6 acre, more or less. Subject to and together with an easement for road purposes as described on the attached Exhibit B (to follow below). Subject to easements, reservations, restrictions or ordinances now of record.

That part of Government Lot 4 of Section 1, Township 49, Range 24, Aitkin County, Minnesota, to be described as follows: Commencing at a point on the South line of the Plat of Sandy Lake Beach where it intersects the southerly extension of the easterly line of Lot 30 of said Plat; thence Easterly along said South line of said plat a distance of 509.04 feet; thence South along the southerly extension of the westerly line of Lot 19 of said plat a distance of 125.00 feet; thence South 00 degrees 54 minutes 01 seconds West a distance of 383.94 feet to a point hereby designated and hereinafter referred to as POINT A; thence North 83 degrees 54 minutes 29 seconds East a distance of 194.01 feet; thence South 83 degrees 56 minutes 41 seconds East a distance of 373.00 feet; to the actual point of beginning of the following tract of land to be described; thence South a distance of 100.00 feet; thence South 79 degrees 56 minutes 57 seconds East a distance of 222 feet, more or less, to the shoreline of Big Sandy Lake; thence Northerly along said shoreline a distance of 102 feet, more or less, to its intersection with a line bearing South 80 degrees 53 minutes 37 seconds East from the actual point of beginning; thence North 80 degrees 53 minutes 37 seconds West a distance of 242.68 feet, more or less, to the actual point of beginning. It being the intent of this description that the southerly extension of the easterly line of said Lot 30 has an assigned bearing of South. Containing 0.6 acre, more or less. Subject to and together with an easement for road purposes as described on the attached Exhibit B (to follow below). Subject to easements, reservations, restrictions or ordinances now of record.

EXHIBIT B

A 33 foot wide perpetual easement for road purposes over, under and across the following described property: Government Lot 3 and Government Lot 4 of Section 1, Township 49, Range 24, Aitkin County, Minnesota. Said easement being 16½ feet to the right and 16½ feet to the left of the following centerline to be described: Beginning at the before described POINT A; thence North 83 degrees 54 minutes 29 seconds East a distance of 194.01 feet; thence South 83 degrees 56 minutes 41 seconds East a distance of 373.00 feet; thence South a distance of 100.00 feet; thence South 16 degrees 27 minutes 56 seconds East a distance of 30.00

<u>feet; thence North 16 degrees 27 minutes 56 seconds West a distance of 30.00 feet; thence North a distance of 100.00 feet; thence North 83 degrees 56 minutes 41 seconds West a distance of 373.00 feet; thence North 05 degrees 46 minutes 49 seconds East a distance of 221.40 feet; thence North 06 degrees 30 minutes 31 seconds West a distance of 279.36 feet to the south line of the plat of Sandy Lake Beach and there said centerline terminating. It is the intent of this description for the easterly and westerly lines of said easement to be lengthened of shortened to intersect with the south line of said plat</u>.

(herein "Property"). However, Plaintiff's mortgage omits the language underlined in the above legal description. As explained in Plaintiff's Statement of the Case [Docket 14], "The parties intended that the Mortgage encumber the entire parcel containing Lots K and L, but . . . the Mortgage only encumbers one half of the parcel, namely Lot K." *Id.* p. 2.

4. The Plaintiff's mortgage, with the incorrect legal description, was originally filed with the Office of the Aitkin County Recorder by Eagle Valley Bank, N.A., on January 22, 2004, prior to its being assumed by Plaintiff. Compl. ¶ 5.

5. The United States properly recorded two Notices of Federal Tax Lien ("NFTLs") in the Office of the Aitkin County Recorder on March 4, 2009 and March 17, 2009 against Raymond W. Haugland and Yvonne J. Haugland, respectively. Compl. ¶¶ 9-10; Declaration of David W. Fuller ("Fuller Decl."), Ex. 1 & 2.

6. As of September 30, 2010, the value of each of the United States's federal tax liens was $203,955.98, with additional interest and fees continuing to accrue. Fuller Decl., Ex. 3-4.

7. Plaintiff filed a Complaint in the Aitkin County District Court on September 25, 2009, seeking to reform its mortgage to include the correct description of the

Hauglands' property. *See* Complaint in *KleinBank v. Haugland et al.*, Court File No. 01-CV-09-1145 (Minnesota 9th Dist.).

8. The United States removed the case to this Court on November 2, 2009. Civ. Case No. 09-3065 (DWF/LIB), Docket No. 1.

9. As a result of the error in the legal description of the property, Plaintiff's mortgage only encumbers one half of the parcel at issue in this case. *See generally* Compl.; Plaintiff's St. of the Case, p. 2.

## ARGUMENT

### I. Summary Judgment Standard

Summary judgment is proper if the Plaintiff fails to establish an essential element of his case on which it bears the burden of proof. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A motion for summary judgment should be granted unless a party can proffer specific facts to sustain its allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In response to a motion for summary judgment, a party cannot rest upon mere allegations or upon conclusory statements. *Celotex*, 477 U.S. at 322.

### II. The United States's Tax Liens Are Perfected.

The United States's tax liens arise at the time of the tax assessment and continue until the liability is paid or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. Any such lien attaches immediately to any property owned or acquired by the taxpayer during the existence of the lien. *Glass v. City Bank v. United States*, 326 U.S. 265, 268-69 (1945). Although the lien arises at the time of assessment, the Internal

Revenue Code ("I.R.C.") requires that a NFTL be filed before it is valid against purchasers, holders of security interests, mechanic's lienors, or judgment lien creditors. 26 U.S.C. § 6323(a). In this case, it is undisputed that the United States filed its NFTLs in the Office of the Aitkin County Recorder on March 4 and March 17, 2009. *See* Statement of Facts, *supra*, ¶ 5. Therefore, the United States has valid liens that should be afforded priority over Plaintiff's interest for the reasons described in more detail below.

### III. The United States's Tax Liens Take Priority Over Plaintiff's Mortgage Because The Mortgage Is Not Choate.

The general priority rule for comparing security interests is "first in time, first in right." Under federal law, which is controlling here, however, a lien cannot compete with a federal tax lien unless and until the competing lien is "choate." *United States v. New Britain*, 347 U.S. 81, 84 (1954). The Supreme Court has made clear that a "choate lien" is one in which there is "nothing more to be done" to perfect the interest. *United States v. New Britain*, 347 U.S. 81, 84 (1954); *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 89 (1963) (quoting *U.S. v. New Britain*, 347 U.S. at 84). A lien is perfected or choate when "'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *United States v. New Britain,* 347 U.S. at 84. A competing lien is thus capable of taking priority to a federal tax lien when the creditor has a right to summary enforcement of its lien. *Minnesota Dep't of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir. 1999) (holding that federal tax lien took priority over state tax lien).

The choateness doctrine continues "except to the extent that it is supplanted by express provisions of the Federal Tax Lien Act." *Haas v. Internal Revenue Serv.*, 31 F.3d

6

1081, 1085 n.6 (11th Cir. 1994) (citing *Aetna Ins. Co. v. Tex. Thermal Indus., Inc.*, 591 F.2d 1035, 1038 (5th Cir. 1979)).  In *Horton Dairy, Inc. v. United States*, 986 F.2d 286 (8th Cir. 1993), the Eighth Circuit applied the choateness doctrine to determine the priority of a holder of a security interest, as defined in 26 U.S.C. § 6323(h)(1)(A), against a federal tax lien.  In that case the Eighth Circuit stated, "'[c]hoate state created liens take priority over later filed federal liens . . . while inchoate liens do not.'"  986 F.2d at 291 (quoting *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84 (1963)).  See *J.D. Court, Inc. v. United States*, 712 F.2d 258, 260-64 (7th Cir. 1983), for a discussion of the current applicability of the choateness doctrine in light of the Federal Tax Lien Act of 1966.

The Eighth Circuit also has explained that in the absence of the choateness requirement, "'a State could affect the standing of federal liens, contrary to the established doctrine, simply causing an inchoate lien to attach at some arbitrary time. . . .'"  *Id.* at 729 (quoting *United States v. New Britain*, 347 U.S. at 86).  "The importance of securing adequate revenues to discharge national obligations justifies the extraordinary priority accorded federal tax liens through the choateness and first-in-time doctrines."  *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734 (1979).  This Court must therefore apply the choateness requirement before considering any arguments, for example, in equity.

In this case, the question of whether the Plaintiff is entitled to have its mortgage reformed does not affect the priority of the federal tax liens, for two reasons.  First, at the time the notices of federal tax lien were filed, the Plaintiff's mortgage was not perfect, as defined under federal law – including 26 U.S.C. § 6323(a) and (h)(1) and the federal

7

common law doctrine of choateness. Second, any reformation does not relate back as against the United States's tax liens. These points are elaborated below.

### a. Federal Law Dictates That The Federal Tax Liens Have Priority Over The Plaintiff's Interest In The Hauglands' Property.

"Federal law determines choateness." *United States v. Pioneer Am. Ins. Co.,* 374 U.S. at 89. Thus, "[t]he relative priority of the lien of the United States for unpaid taxes is . . . always a federal question to be determined finally by the federal courts." *United States v. Acri*, 348 U.S. 211, 213 (1955). While it is true that "state law determines the nature and the extent of a taxpayer's interest in 'property,'" there is no question that "Federal law . . . governs the relative priority accorded to the competing liens asserted against the property of the delinquent taxpayer." *Minnesota Dep't. of Revenue*, 184 F.3d at 728; *see*, *e.g.*, *Atlas, Inc. v. United States*, 459 F. Supp. 1000 (D.N.D. 1978) (applying federal law to question of choateness, but applying state law to question of what portion of property the debtor owned). For that reason, the characterization of a particular lien under state law as "choate" or "perfect" does not bind this Court. *E.g.*, *Acri*, 348 U.S. at 213; *Ersa, Inc. v. Dudley*, 234 F.2d 178, 181 (3d Cir. 1956) ("[W]hile in federal tax cases a state court's characterization of a lien as choate and perfected is not binding on the federal courts, the characterization by a state court of a lien as inchoate is conclusive on the federal courts."), *reversed on other grounds as recognized by Mozingo v. Penn. Dep't of Labor & Indus.*, No. Civ. A. 98-4337, 234 B.R. 867 (E.D.Pa. Apr. 19, 1999).

### b. <u>Plaintiff's Mortgage Does Not Have Priority Over The United States's Tax Liens Under Federal Law.</u>

Plaintiff's mortgage cannot have priority over the United States's tax liens because it was not summarily enforceable at the time the NFTLs were filed. The Supreme Court has made clear that a "choate lien" is one in which there is "nothing more to be done" to perfect the interest. *United States v. New Britain*, 347 U.S. at 84. For example, in *United States v. McDermott*, 507 U.S. 447, 453 n.4 (1993), the Court explained that a tax lien took priority over a judgment lien that was not perfected until the debtor gained an interest in property acquired after both the judgment and tax liens were filed. Though the judgment creditor did not have to take any affirmative steps to perfect the interest in the after-acquired property, there was *not* "nothing to be done" to perfect its interest in the property: The debtor had to acquire the property first, and the judgment lien could not be "anything other than 'inchoate' with respect to property that is not yet subject to the lien." *Id*. at 453 n.5. Therefore, the federal tax lien, which becomes perfected as to any property on the date it is filed, took priority. *Id.* Here, that occurred in March of 2009, whereas KleinBank's mortgage has yet to be reformed.

To prevail against a federal tax lien, a "holder of a security interest" must demonstrate "that the lien arising from the security interest was choate at the time the IRS filed the tax lien." *U.S. v. Central Bank of Denver*, 843 .3d 1300, 1307 (10th Cir. 1988). In *Samco Mortgage Corp. v. Keehn*, 721 F. Supp. 1209 (D. Wyo. 1989), the court considered the same issue present in this case and applied the choateness doctrine after

the adoption of the Federal Tax Lien Act of 1966. In that case, the plaintiff mortgage company brought an action to foreclose its real estate mortgage encumbering property on which the IRS filed several tax liens. *Id.* at 1210. However, the plaintiff's mortgage contained an erroneous legal description – specifically, even though the mortgage included the correct street address, there was no indication from the mortgage that the street address and the mortgaged property were one and the same. *Id.* The plaintiff successfully brought an action in state court to reform the mortgage so that it would reflect the actual legal description of the taxpayers' property. *Id.* After the defective mortgage was recorded, but before it was reformed, the IRS filed its tax liens for taxes that the taxpayers owed. *Id.*

In *Samco*, the court determined that the mortgage containing the erroneous legal description was inchoate because (1) it failed to identify the property subject to the mortgage, and (2) there was more to be done (*i.e.* bring a reformation action) to perfect the mortgage. *Id.* at 1211. The court went on to state that, even though the mortgage when originally filed may have been deemed perfected under state law, this "conclusion is not binding upon the United States when asserting priority of its tax liens." *Id.* at 1212.

The Eighth Circuit recently acknowledged with approval the rationale in *Samco*. In *In re Stradtmann*, BAP No. 07-6056, 391 B.R. 14 (8th Cir. June 30, 2008), the Eighth Circuit considered an appeal from the bankruptcy court's decision granting the United States's motion for summary judgment on virtually the same issue that is before this Court. The court of appeals acknowledged that "neither the Trustee nor Ameriquest has challenged the bankruptcy court's ruling that the I.R.S.'s liens are superior to the

Mortgage based on the 'choateness' doctrine." *Id*. at 17 n.6.  The Eighth Circuit went on to opine, however, that "[d]espite the absence of an explicit challenge to this ruling, we find that the bankruptcy court ruling on this issue is correct and should be affirmed." *Id*. (*citing Samco*, 721 F. Supp. At 1209).[1]

The relevant question here, as in *McDermott* and *Samco*, is whether the mortgage was "summarily enforceable" as of the dates that the federal tax liens were filed. *McDermott*, 507 U.S. at 453 n.5.  Plaintiff's reformation action shows that its mortgage was not choate as to the subject property on the date it was filed.  *See* Statement of Facts, *supra*, ¶¶ 7, 9.  Plaintiff's mortgage is not choate, because the legal description in the mortgage, according to the undisputed facts, does not describe the entire parcel to which the Hauglands hold a legal property right.  Statement of Facts, *supra*, ¶¶ 1-4.  The Plaintiff's mortgage fails to identify all of the property it was allegedly intended to encumber, and the Plaintiff would not currently have the right to summarily enforce its lien, should it need or choose to do so.  The federal tax liens therefore take priority.

### IV. At The Time The NFTLs Were Filed, The Plaintiff Was Not A Holder Of A Security As Defined In 26 U.S.C. § 6323(A) And (H)(1).

Because Plaintiff's mortgage was inchoate under federal law at the time the NFTLs were filed, this Court need go no further.  The United States anticipates that the Plaintiff will raise what are factually irrelevant, equitable arguments to attempt to

---

[1] The Supreme Court has recognized that similar defects have kept mechanics' liens from acquiring priority status over federal tax liens. *See United States v. State of Vt.*, 377 U.S. 351, 355-56 and n.5 (1964).  In *United States v. White Bear Brewing Co.*, 350 U.S. 1010 (1956) (per curiam), a federal tax lien was accorded priority over a prior-filed mechanics' lien, even where the mechanics' lien had been reduced already to a judgment.

persuade this Court to ignore the choateness analysis. For that reason, the United States will address certain of those arguments here.

The United States's tax liens are entitled to priority under the statutory provisions of 276 U.S.C. § 6323(a) and (h)(1). Pursuant to 26 U.S.C. § 6323, until an NFTL is filed, a tax lien is not effective against, among others, "holders of security interest" – which includes mortgagees. A "holder of a security interest" is defined by I.R.C. § 6323(h)(1) and Treasury Regulation § 301.6323(h)-1(a)(1). A "security interest" is "any interest in property acquired by contract for the purpose of secreting payment or performance of an obligation or indemnifying against loss of liability. Treas. Reg. § 301.6323(h)-1(a)(1). A holder of a security interest is a person in whose favor exists a security interest. Treas. Reg. § 301.6323(h)-1(a)(4). The security interest exists at the time the holder parts with its money or money's worth, the property securing the obligation is in existence, and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation. 26 U.S.C. § 6323(h)(1)(A). In this case, to determine whether KleinBank has a valid security interest, we must examine whether Minnesota law accords a judgment lienor protections against a recorded mortgage that contains an erroneous legal description for property in which the mortgagor (the Debtors) had no interest.

For purposes of Code § 6323(a) and (h)(1), the IRS is placed in the shoes of a "hypothetical judgment lien creditor." *Haas*, 31 F.3d at 1087. Under this analysis, the correct inquiry is "whether the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, regardless of whether the

Government has knowledge or notice of the competing non-federal interest." *Id*. at 1087 (citing *Dragstrem v Obermeyer*, 549 F.2d 20 (7th Cir. 1977)).  As the Eleventh Circuit in *Haas* and the Seventh Circuit in *Dragstrem* observed, this interpretation is consistent with the central purpose of 26 U.S.C. § 6323:  "promoting certainty and stability in business affairs for secured creditors." *Haas*, 31 F.3d at 1087.  "The definitional scheme articulated by Congress obviates the need for a case-by-case inquiry into whether the IRS had 'notice.'  Such an inquiry would undermine the certainty and stability afforded by the definitional framework, effectively denigrating a central policy under the Act without providing any countervailing benefit." *Id*. at 1088.

In this case the United States's NFTLs were property filed with the Aitkin County recorder in March of 2009 and attached to all property rights of the Hauglands then existing and any after-acquired property.  The Plaintiff's mortgage, which contains an erroneous legal description, was originally executed, delivered and recorded in January 2004 and assumed by Plaintiff in August 2007.  Statement of Facts, *supra*, ¶¶ 2-4.  However, the defective mortgage is not valid against subsequent judgment lien creditors.  KleinBank's interest in the Hauglands' Real Property is dependent upon having its mortgage reformed – to include the legal description of the entire parcel actually owned by the Hauglands at the time the mortgage was executed, delivered, recorded and subsequently assumed.

Because the Plaintiff's mortgage contains an erroneous legal description, the Plaintiff's mortgage is not protected under Minnesota law against a subsequent judgment lien creditor.  In order for an agreement to constitute a valid mortgage, "[i]t must be in

13

writing, and must clearly indicate the creation of a lien, specify the debt to secure which it is given, and **the property upon which it is to take effect**." *Hatlestad v. Mutual Tr. Life Ins. Co.*, 268 N.W. 665 (Minn. 1936) (*quoting* 1 Jones, MORTGAGES (8th ed.) § 75) (emphasis added). Without reformation, KleinBank has no enforceable interest in the "Lot L" half of the Hauglands' property. The Plaintiff admitted as much in its opening complaint, when it stated that its mortgage "contained an incorrect legal description." Compl. ¶¶ 6-7; *see also* Plaintiff's Statement of the Case, p. 2 (noting that "the Mortgage only encumbers one half of the parcel, namely Lot K").

Minnesota Statute § 507.34 protects judgment lien creditors against unrecorded conveyances of real property. Judgment lien creditors without actual, constructive, or inquiry notice of a third party's rights in property are protected against those claims of which they have no notice. *Nussbaumer v. Fetrow*, 556 N.W.2d 595, 598 (Minn. Ct. App. 1996). In determining whether KleinBank's recorded mortgage was valid against a "hypothetical judgment lien creditor" at the time the United States recorded its NFTLs, actual notice is irrelevant.

A properly recorded mortgage constitutes constructive notice. *In re Vondall*, No. 06-6069MN, 364 B.R.668, 671(8th Cir. Mar. 16, 2007), *aff'd* 279 Fed. App. 415 (8th Cir. 2008). The Eighth Circuit has explained that a "mortgage containing a defective legal description does not provide constructive notice to subsequent purchasers unless the subject property can be determined with reasonable certainty or the defect is apparent on the face of the mortgage." *Vondall*, 364 B.R. at 671; *In re Stradtmann*, 391 B.R. at 18-19. In *In re Vondall*, the court went on to articulate the standard for apparent defective

14

legal descriptions, which may give rise to implied notice: (1) knowledge is imputed from an "impossible legal description," and (2) the defect "will not be apparent unless it can be resolved in only one way." 364 B.R. at 672. If there is "nothing on the face of a mortgage to alert a purchaser that the property description is defective, then there is nothing on the face of the mortgage to trigger a duty of further inquiry." *Id.* at 673.

In this case, the defective legal description within KleinBank's mortgage was not apparent. While highly significant, the omission of one of the two lots encompassed by the Hauglands' property is not obvious to one looking at the mortgage instrument. There is nothing inherently unusual or "impossible" about the legal description that appears on the document, incomplete though it is. *See* Statement of Facts, *supra*, ¶ 3. Because the Plaintiff's mortgage as it currently exists is not protected against a hypothetical class of judgment lien creditors, the Plaintiff's mortgage is not entitled to priority status against the United States's tax liens. It is irrelevant whether the IRS had actual knowledge of the Plaintiff's competing non-federal interest.

## V. Even If The Plaintiff's Mortgage Is Reformed As Against The United States, It Does Not Relate Back To The Original Date The Mortgage Was Recorded.

"The Supreme Court long ago rejected the relation back theory to give an inchoate state created lien priority over a federal tax lien." *Samco,* 721 F. Supp. at 1211 (citing *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50 (1950)). Accordingly, even if KleinBank's mortgage is reformed, its interest will not relate back against the United States's tax liens. KleinBank's mortgage was not valid against the United States's tax liens at the time the NFTLs were filed because it (1) was inchoate insofar as it failed

to identify the property subject to the mortgage, such that KleinBank could not summarily enforce its interest; and (2) was not protected under state law against subsequent judgment creditors.  It appears that the only remaining theory on which KleinBank could prevail regarding priority over the tax lien is one based on KleinBank's assertion that reformation of its mortgage would relate back to the date it was originally executed, delivered, recorded and/or assumed.  That is not the law, however.

In *Haas v. IRS*, 31 F.3d 1081, the court held that "Treasury Regulations forbid application of a relation back principle to award an unperfected lien priority over the tax lien."  Treas. Reg. § 301.6323(h)-1(a)(2)(I) expressly states that the date of perfection of a lien competing with a tax lien "shall be determined without regard to any rule or principle of local law which permits the relation back of any requisite action to a date earlier than the date on which the action is actually performed."  Accordingly, the law is clear that reformed instruments do not relate back against the United States's tax liens.

## CONCLUSION

For these reasons, summary judgment must be entered on behalf of Defendant United States of America.


Date: October 1, 2010                                B. TODD JONES
                                                     United States Attorney

                                                     s/ David W. Fuller

                                                     BY: DAVID W. FULLER
                                                     Assistant U.S. Attorney
                                                     Attorney ID Number 390922
                                                     60 United States Courthouse
                                                     300 South Fourth Street
                                                     Minneapolis, MN 55415
                                                     (612) 664-5600
                                                     david.fuller@usdoj.gov

                                                     Attorney for Defendant the United States
                                                     of America